AO 91 (Rev. 11/11) Criminal Complaint  (modified by USAO for telephone or other reliable electronic means)

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 3:21MJ210 |
| DEMARCUS L. CUNIGAN | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __February 10, 2021__ in the county of __Montgomery__ in the __Southern__ District of __Ohio__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(G)(1) and 924(a)(2) | Felon in Possession of a Firearm |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

*Matthew Heiser*
Complainant's signature

TFO Matthew Heiser, ATF
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __Telephone__ *(specify reliable electronic mean)*

Date: 5/26/21

City and state: Dayton, Ohio

Hon. Sharon L. Ovington, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Task Force Officer Matthew Heiser ("Affiant"), being duly sworn, depose and state the following:

1. I have been employed the city of Dayton Police Department for 19 years. I have been sworn as a task force officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) since May of 2020. I am a member of the Violent Offender Crime Task Force that investigates criminal organizations in the Southern District of Ohio. I have been involved in numerous investigations of federal firearms and narcotic violations. These investigations have resulted in the arrest and conviction of criminal defendants.

2. I make this affidavit in support of a criminal complaint and arrest warrant for **DEMARCUS L. CUNIGAN ("CUNIGAN")**, for a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

3. 18 U.S.C. §§ 922(g)(1) and 924(a)(2) prohibits any person who knows he has previously been convicted of a felony offense—*i.e.*, an offense punishable by imprisonment for a term exceeding one year—from knowingly possessing any firearm or ammunition in and affecting interstate commerce.

4. I make this affidavit from personal knowledge based on my participation in this investigation, including witness interviews and reports by myself and/or other law enforcement agents, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. The information outlined below is provided for the limited purpose of establishing probable

cause and does not contain all details or all facts of which I am aware relating to this investigation.

5. On February 10, 2021 at approximately 3:16 pm, officers with the Dayton Police Department assigned to West Patrol Community Problem Response Team arrested **CUNIGAN** on numerous state charges.

6. Officers observed a dark blue Saturn Vue, bearing Ohio license plate HDV4384, with excessively dark window tint. This is in violation of Ohio Revised Code § 4513.241. The vehicle was running with exhaust coming from the vehicle. Officers activated a marked police cruiser's overhead lights to conduct a traffic stop. The driver, later identified as **CUNIGAN**, immediately fled the traffic stop. Officers attempted to deploy a terminated stop stick but were unsuccessful.

7. **CUNIGAN** fled through the parking lot where a construction crew blocked his egress of the Cornell Meat Market. He then attempted to drive through a yard which was located between the parking lot and Cornell Drive. In doing so, the vehicle operated by **CUNIGAN** struck a parked construction truck. This caused disabling damage to the vehicle operated by **CUNIGAN**. **CUNIGAN** exited the driver side door of the vehicle and fled on foot.

8. **CUNIGAN** began to head south toward a wooded area which was covered with snow. **CUNIGAN** continued to flee, disregarding all commands, as law enforcement and **CUNIGAN** approached a small stream. While running through thick brush, law enforcement observed **CUNIGAN** attempting to reach in the front of his pants. Due to law enforcement's pursuit, it appeared **CUNIGAN** was unsuccessful in discarding any type of contraband located in his waistband.

9. The foot pursuit continued and **CUNIGAN** was still not obeying law enforcement commands to stop. **CUNIGAN** jumped down onto an icy creek. The drop between the ground level onto the creek is approximately six to eight feet. **CUNIGAN's** feet got wet and he stopped fleeing and was placed into handcuffs.

10. Responding crews responded to the scene. Law enforcement re-traced the path of travel. Law enforcement observed a tan magazine sticking up from under a log in which both law enforcement and **CUNIGAN** ran by during the foot pursuit.

11. Law enforcement retrieved a black Glock 19, 9mm pistol, serial number MDD880. The tan magazine was loaded with 9mm ammunition and was then seated into the handgun and it fit properly. There were 17 rounds of ammunition in the magazine. A record check of the firearm revealed that it was stolen out of Brown County, Ohio. DNA was collected from the firearm. A subsequent DNA search warrant was obtained from **CUNIGAN**. According to the DNA laboratory report, a mixed DNA profile was obtained from the Glock. The major, male component from this mixed profile matches **CUNIGAN**. The probability of an unrelated individual having the same profile at these areas is approximately:1 in 46.8 nonillion African-Americans; 1 in 35.0 nonillion Caucasians; and 1 in 152.4 nonillion Southwestern Hispanics.

12. The firearm was test fired and expelled a projectile. *See* 18 U.S.C. § 921(a)(3).

13. On February 11, 2021, **CUNIGAN** was interviewed at the Montgomery County Jail by Detectives Jacob Rillo and Matthew Gray. Prior to the interview, **CUNIGAN** was advised of his *Miranda* rights and waived his rights and agreed to be interviewed by law enforcement. During the interview, **CUNIGAN** stated he did not throw a gun down when he was running. He acknowledged he had been in prison for four years for trafficking in heroin.

14. Your Affiant conducted a record check related to **CUNIGAN**. The records check revealed that **CUNIGAN** was convicted of Trafficking in Heroin, a felony of the third degree, in violation of Ohio Revised Code § 2925.03(A)(2). This conviction occurred in Montgomery County Common Pleas Court Case No. 2015 CR 00673. This offense is a crime punishable by imprisonment for a term exceeding one year.

15. On May 11, 2021, your affiant requested SA Chris Reed (an ATF Interstate Nexus Agent) to examine the Glock 19, 9mm pistol, serial number MDD880. He examined the firearm and confirmed it had traveled in or affected interstate commerce.

16. Based on the aforementioned facts, I respectfully submit that there is probable cause to believe that on February 10, 2021, in the Southern District of Ohio, **CUNIGAN**, knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm, and the firearm was in and affecting commerce.

Further affiant sayeth naught.

*Matthew Heiser*
Matthew Heiser
Task Force Officer, ATF
Dayton, Ohio

Subscribed and sworn to before me on this 26th Day of May, 2021.

Sharon L. Ovington
United States Magistrate Judge